## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| HYRECAR, INC., | Case No. 23-10259 (TMH) |
| Debtor. [1] | |
| | Related Docket Nos. 72, 140, 225, & 252 |

## ORDER (I) APPROVING (A) THE ASSET PURCHASE AGREEMENT, (B) THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, AND (C) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (II) GRANTING RELATED RELIEF

Upon the motion [Docket No. 72] (the "Sale Motion")[2] of the above-captioned debtor and debtor in possession (the "Debtor") for entry of an order (this "Sale Order"): (i) approving (a) that certain Asset Purchase Agreement attached hereto as **Exhibit 1**, together with all ancillary documents thereto (the "Agreement"); (b) the sale of the Acquired Assets free and clear of liens, claims, encumbrances, and other interests to the extent set forth in the Agreement (the "Sale"); and (c) the assumption and assignment of the Assigned Contracts (as defined below) to Getaround, Inc., a Delaware corporation  (the "Purchaser") in connection with the Sale, and (ii) granting related relief; and the Court having entered an order on March 17, 2023 [Docket No. 140] (the "Bid Procedures Order"), (i) approving the Bid Procedures to govern the Debtor's sale of Assets, (ii) authorizing the Debtor to enter into a Stalking Horse Agreement and approving Bid Protections in connection therewith, (iii) authorizing the Debtor to schedule the Auction, (iv) scheduling the

---

[1]     The last four digits of the Debtor's federal tax identification numbers are 0487.  The Debtor's mailing address is 1001 Wilshire Boulevard PMB 2196, Los Angeles, CA, 90017.

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Sale Motion or in the Agreement.  To the extent any such terms are defined in both the Sale Motion and the Agreement, such terms shall have the meaning ascribed to them in the Agreement.

Sale Hearing[3], (v) approving the form and manner of notice of the proposed sale transactions, the Bid Procedures, the Auction, the Sale Hearing, and related dates and deadlines and (vi) approving and authorizing the Assumption Procedures governing the assumption and assignment of Assigned Contracts to the Successful Bidder; and the Court having entered orders on April 21, 2023 [Docket No. 225] and on May 9, 2023 [Docket No. 252] amending certain Bid Procedures (the "Amended Bid Procedures"); the Auction having been held on May 8, 2023 in accordance with the Bid Procedures Order; and the Debtor having determined, after a meaningful marketing process and an Auction, that the Purchaser has submitted the highest or otherwise best bid for the Acquired Assets; and the Debtor having submitted the *Declaration of James Zukin in Support of Debtor's Motion for Entry of (A) An Order (I) Approving Bidding Procedures in Connection with the Sale of The Debtor's Assets and Related Bid Protections, (II) Approving Form and Manner of Notice, (III) Scheduling Auction and Sale Hearing, (IV) Authorizing Procedures Governing Assumption and Assignment of Certain Contracts and Unexpired Leases, and (V) Granting Related Relief; and (B) An Order (I) Approving Purchase Agreement, (II) Authorizing a Sale Free and Clear of All Liens, Claims, Encumbrances, and Other Interests* [Docket No. 73], *Supplemental Declaration of James Zukin in Support of Debtor's Motion for Entry of an Order (I) Approving Purchase Agreement and (II) Authorizing a Sale Free and Clear of All Liens, Claims, Encumbrances, and Other Interests* [Docket No. 263], and *Declaration Of Thomas Alderman In Support Of Debtors Motion For Entry Of (A) An Order (I) Approving Bidding Procedures In Connection With The Sale Of The Debtors Assets And Related Bid Protections, (II) Approving Form And Manner Of Notice, (III) Scheduling Auction And Sale Hearing, (IV) Authorizing Procedures Governing Assumption And Assignment Of Certain Contracts And Unexpired Leases, And (V) Granting*

---

[3]    References herein to a "Sale Hearing" apply only if the Court conducts such a hearing.

*Related Relief; And (B) An Order (I) Approving Purchase Agreement, (II) Authorizing A Sale Free And Clear Of All Liens, Claims, Encumbrances, And Other Interests* [Docket No. 264] (collectively, the "Declarations") in support of the Sale; and the Debtor having filed that certain *Notice of Completion of Auction and Designation of Successful Bidder* [Docket No. 255] in accordance with the Bid Procedures Order, designating the Purchaser as the Successful Bidder for the Acquired Assets; and upon adequate and sufficient notice of the Sale Motion, the Agreement, and all transactions contemplated thereunder (the "Transactions"); and all interested parties having been afforded an opportunity to be heard with respect to the Sale Motion and all relief related thereto [Docket Nos. 89, 110, 145, 152, 157, 177, 178, 228, 243, 244, and 248]; and the Court having reviewed and considered the Sale Motion and all relief related thereto and any objections thereto including the Objections;[4] and upon the Declarations and the full record in support of the relief requested by the Debtor in the Sale Motion; and this Court having jurisdiction over this matter; and this Court having found that venue of this case and the Sale Motion in this district is proper; and it further appearing that the legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the relief granted herein; and it appearing that  the relief

---

[4]    "Objections" means and includes: *Oracle Credit Corporation and Oracle America, Inc., successor in interest to NetSuite, Inc. Limited Objection To And Reservation Of Rights Regarding: (1) Debtor's Motion For Entry Of (A) An Order (I) Approving Bidding Procedures In Connection With The Sale Of The Debtor's Assets And Related Bid Protections, (II) Approving Form And Manner Of Notice, (III) Scheduling Auction And Sale Hearing, (IV) Authorizing Procedures Governing Assumption And Assignment Of Certain Contracts And Unexpired Leases, And (V) Granting Related Relief; And (B) An Order (I) Approving Purchase Agreement, (II) Authorizing A Sale Free And Clear Of All Liens, Claims Encumbrances, And Other Interests; And (2) Notice Of Possible Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases In Connection With Sale* [Docket No. 183]; *Objection Of Voyager Indemnity Insurance Company And Reliable Lloyds Insurance Company To Debtor's Notice Of Possible Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases In Connection With Sale* [Docket No. 184]  *and Objection Of Voyager Indemnity Insurance Company And Reliable Lloyds Insurance Company To Debtor's Supplemental Notice Of Possible Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases In Connection With Sale* [Docket No 207]; *Objection Of TTEC B.V. to Notice of Possible Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with Sale* [Docket No. 211] and *Response / Stripe, Inc.'s Reservation of Rights and Response to Debtor's Amendment to Notice of Possible Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with sale* [Docket No. 210].

requested in the Sale Motion is in the best interests of the Debtor, its estate, its creditors, and all other parties in interest; and upon the full record of the Chapter 11 Case and all other pleadings and proceedings, including the Sale Motion; and after due deliberation thereon, and good and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS THAT:[5]**

## I.    Jurisdiction, Venue, and Statutory Predicates

A.    This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157(b)(l) and 1334(a), and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(a).  Venue is proper in this District and in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    The statutory predicates for the relief requested in the Sale Motion are sections 105(a), 363, and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), Rules 2002(a)(2), 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

C.    This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, waives any stay, and expressly directs entry of judgment as set forth herein.

---

[5]    All findings of fact and conclusions of law announced by the Court at the Sale Hearing (if any) in relation to the Sale Motion are incorporated herein to the extent not inconsistent herewith.

## II.   <u>Notice</u>

D.   Due, proper, timely, adequate, and sufficient notice of the Sale Motion, Sale Hearing, the Auction, the Sale, the Assumption Procedures and the assumption and assignment of the Assigned Contracts has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 9007, and 9014, and in compliance with the Bid Procedures Order and the Amended Bid Procedures, to each party entitled to such notice, and no other or further notice is, or shall be, required.  [Docket Nos. 89, 110, 145, 152, 157, 177, 178, 228, 243, 244, and 248].

E.   A reasonable opportunity to object and be heard with respect to the Sale Motion and the Sale and the relief requested in the Sale Motion has been afforded to all interested persons and entities.  The disclosures made by the Debtor concerning the Agreement, the Sale, and the Sale Hearing were sufficient, complete, and adequate.

## III.   <u>Good Faith of Purchaser</u>

F.   The Agreement was negotiated, proposed, and entered into by the Debtor and the Purchaser without collusion, in good faith, and from arm's-length bargaining positions.

G.   Neither the Debtor nor the Purchaser has engaged in any conduct that would cause or permit the Agreement or the Sale to be avoided, or costs or damages to be imposed, under Bankruptcy Code section 363(n).  All payments to be made by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the Sale have been disclosed. The Purchaser is purchasing the Acquired Assets in good faith and is a good-faith buyer within the meaning of section 363(m) of the Bankruptcy Code and is not an "insider" of the Debtor (as defined under section 101(31) of the Bankruptcy Code).  The Purchaser is therefore entitled to all of the protections afforded under section 363(m) of the Bankruptcy Code.

**IV.**    **Highest or Otherwise Best Offer**

H.    The Debtor's marketing and Auction process with respect to the Acquired Assets, including the Debtor's prepetition marketing process with respect to the Acquired Assets, afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Acquired Assets.  The Debtor and its representatives conducted the marketing process in accordance with the Bid Procedures, as they may have been amended or modified in accordance with their terms, in all respects.  Based on the record of these proceedings, all creditors and other parties in interest and all prospective purchasers have been afforded a reasonable and fair opportunity to bid for the Debtor's Assets, including the Acquired Assets.

I.    The Debtor conducted a fair and open sale process in a manner reasonably calculated to produce the highest or otherwise best offer for the Acquired Assets in compliance with the Bid Procedures Order.  The sale process and Bid Procedures were non-collusive, substantively and procedurally fair to all parties and to each person or entity entitled to participate in the Auction pursuant to the Bid Procedures Order, and each person or entity entitled to participate in the Auction pursuant to the Bid Procedures Order was afforded notice and a full, fair and a reasonable opportunity to make a higher or otherwise better offer for the Acquired Assets. The Bid Procedures, as they may have been amended or modified in accordance with their terms, have been complied with in all respects by the Debtor and the Purchaser.

J.    The Agreement constitutes the highest or otherwise best offer for the Acquired Assets, and the Debtor's determination, in consultation with the Official Committee of Unsecured Creditors ("Committee"), that the Agreement constitutes the highest or otherwise best offer for the Acquired Assets constitutes a valid and sound exercise of the Debtor's business judgment consistent with its fiduciary duties and applicable law.  The consideration provided by the

6

Purchaser for the Acquired Assets provides fair and reasonable consideration to the Debtor for the sale of the Acquired Assets and the assumption of all Assumed Liabilities (as defined in the Agreement), and the performance of the other covenants set forth in the Agreement will provide a greater recovery for the Debtor's estate than would have been provided by any other available alternative.

K.      Purchaser would not have entered into the Agreement and would not consummate the sale, thus adversely affecting the Debtor, its estate, and their creditors, if the sale of the Acquired Assets to Purchaser was not free and clear of all Claims (as defined below) and interests, except for the Assumed Liabilities, or if Purchaser would, or in the future could, be liable for any pre-closing Claims relating to the Acquired Assets, except for the Assumed Liabilities.

L.      Approval of the Sale Motion and the Agreement, the Transactions, and the consummation of the Sale is in the best interests of the Debtor's estate, its creditors, and other parties in interest.

**V.      No Successor Liability**

M.      No sale, transfer or other disposition of the Acquired Assets pursuant to the Agreement, or entry into the Agreement, will subject the Purchaser to any liability for claims, obligations, or encumbrances asserted against the Debtor or the Debtor's interests in the Acquired Assets -- other than Assumed Liabilities -- by reason of such transfer under any laws, including any bulk-transfer laws or any theory of successor or transferee liability, antitrust, environmental, product line, *de facto* merger, or substantial continuity or similar theories.  By virtue of the consummation of the transactions contemplated under the Agreement, (i) the Purchaser is not a mere continuation of the Debtor or its estate and there is no continuity of enterprise between the Purchaser and the Debtor, and (ii) the Sale does not amount to a consolidation, merger, or *de facto*

merger of the Purchaser and the Debtor or the Debtor's estate. Accordingly, the Purchaser is not and shall not be deemed a successor to the Debtor or its estate by reason of any theory of law or equity, and the Purchaser's acquisition of the Acquired Assets shall be free and clear of any "successor liability" claims of any nature whatsoever.

## VI.  Validity of Transfer

N.    The Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code, the laws of the United States, or the laws of any state, territory, possession, or the District of Columbia. Neither the Debtor or the Purchaser is entering into the transactions contemplated by Agreement fraudulently under applicable federal and state fraudulent conveyance and fraudulent transfer laws.

O.    The Debtor has full corporate power and authority to execute the Agreement (including all ancillary documents executed in connection therewith). No consents or approvals, other than as may be expressly provided for in the Agreement, are required by the Debtor to consummate such transactions.

P.    The Acquired Assets constitute property of the Debtor's estate and title thereto is vested in the Debtor's estate within the meaning of section 541(a) of the Bankruptcy Code. Subject to section 363(f) of the Bankruptcy Code, the transfer of each of the Acquired Assets to the Purchaser will be, as of the Closing Date, a legal, valid, and effective transfer of the Acquired Assets, which transfer will vest the Purchaser with all right, title, and interest of the Debtor to the Acquired Assets free and clear of (a) all liens (including any liens as that term is defined in section 101(37) of the Bankruptcy Code) and encumbrances relating to, accruing, or arising at any time prior to the Closing Date (collectively, the "Liens") and (b) all debts arising under, relating to, or in connection with any act of the Debtor or claims (as that term is defined in section 101(5) of the

8

Bankruptcy Code), liabilities, obligations, demands, guaranties, options in favor of third parties, rights, contractual commitments, restrictions, interests, mortgages, hypothecations, charges, indentures, loan agreements, instruments, collective bargaining agreements, leases, licenses, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, judgments, claims for reimbursement, contribution, indemnity, exoneration, infringement, products liability, alter-ego, and matters of any kind and nature, whether arising prior to or subsequent to the commencement of the Chapter 11 Case, and whether imposed by agreement, understanding, law, equity, or otherwise, at any time before the Closing Date (collectively, the "Claims").with the exception of the Assumed Liabilities.

Q.      Rights, claims or causes of action under Chapter 5 of the Bankruptcy Code constitute "Excluded Assets" under the Agreement.  Notwithstanding anything to the contrary in the Agreement (if any), the following constitute "Excluded Assets" under the Agreement: (i) any and all claims and causes of action of the Debtor and the estate against current and former directors and officers, (ii) any and all claims and causes of action of the Debtor and the estate against AmeriDrive and Cogent Bank and (iii) any and all other claims and causes of action of the Debtor and its estate which are not expressly included in the definition of "Acquired Assets" under the Agreement.

**VII.    <u>Section 363(f) Is Satisfied</u>**

R.      The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full. . Therefore, the Debtor may sell the Acquired Assets free and clear of all Liens, Claims, and other interests of any kind or nature whatsoever (other than the Assumed Liabilities), with all such Liens, Claims, or other interests to attach to the net cash proceeds ultimately attributable to the property against or in which such Liens, Claims, or other interests are asserted, subject to the terms thereof,

9

with the same validity, force, and effect, and in the same order of priority, which such Liens, Claims, or other interests had prior to the Sale, subject to any rights, claims, and defenses the Debtor or its estate, as applicable, may possess with respect thereto.

S.    The Debtor may sell the Acquired Assets free and clear of all Liens and Claims in, on, or against, or with respect to, any of the Acquired Assets (except the Assumed Liabilities) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Those holders of Liens or Claims against the Debtor, its estate, or any of the Acquired Assets who did not object, or who withdrew their objections, to the Sale, or to the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  All other holders of Liens or Claims (except to the extent that such Liens or Claims are Assumed Liabilities) are adequately protected by having their Liens or Claims, if any, in each instance against the Debtor, its estate, or any of the Acquired Assets, attach to the net cash proceeds of the Sale ultimately attributable to the Acquired Assets in which such creditor alleges Liens or Claims, in the same order of priority, with the same validity, force, and effect that such Liens or Claims had prior to the Sale, subject to any claims and defenses the Debtor and its estate may possess with respect thereto.

## VIII.    <u>Cure Costs and Adequate Assurance of Future Performance</u>

T.    The assumption and assignment of the executory contracts and/or unexpired leases listed in the Agreement (the "<u>Assigned Contracts</u>") pursuant to the terms of this Sale Order is integral to the Agreement and in the best interests of the Debtor and its estate, its creditors, and all other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtor.  The Seller or the Purchaser shall, as applicable pursuant to the terms and conditions of the Agreement: (a) to the extent necessary, cure or provide adequate assurance of

10

cure, of any default existing prior to the date hereof with respect to the Assigned Contracts, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code, and (b) to the extent necessary, provide compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof with respect to the Assigned Contracts, within the meaning of sections 365(b)(l)(B) and 365(f)(2)(A) of the Bankruptcy Code.  For each such Assigned Contract, the Purchaser shall provide adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code. The promises to pay the cure costs (as contemplated in Section 365(b) of the Bankruptcy Code, the "Cure Costs") and the Purchaser's promise and ability to perform the obligations under the Assigned Contracts constitutes adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

## IX.    No Third-Party Beneficiaries

U.      Except as stated expressly in the Agreement or in this Sale Order, nothing in the Agreement creates any third-party beneficiary rights in any entity not a party to the Agreement.

## X.    Compelling Circumstance for an Immediate Sale

V.      The Debtor has articulated good and sufficient reasons for approval of the Agreement and the Sale.  The relief requested in the Sale Motion is in the best interests of the Debtor, its estate, its creditors, and other parties in interest.  The Debtor has demonstrated both (a) good, sufficient, and sound business purposes and justifications for approving the Agreement and (b) compelling circumstances for consummating the Sale outside the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code in that, among other things, the immediate consummation of the Sale to the Purchaser is necessary and appropriate to maximize the value of

11

the Debtor's estate and the Sale will provide the means for the Debtor to maximize distributions to creditors.

  W.  The sale of the Acquired Assets outside of a plan of reorganization pursuant to the Agreement neither impermissibly restructures the rights of the Debtor's creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtor.  The sale does not constitute a *sub rosa* chapter 11 plan.

  **THE COURT HEREBY ORDERS THAT:**

**I.**  <u>General Provisions</u>

  1.  The relief requested in the Sale Motion is approved as set forth herein and on the record of the Sale Hearing, which is incorporated herein as if set forth fully in this Sale Order.

  2.  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to these Chapter 11 Cases pursuant to Bankruptcy Rule 9014.  To the extent that any findings of fact constitute conclusions of law, they are adopted as such.  To the extent any conclusions of law constitute findings of fact, they are adopted as such.

  3.  All objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, resolved herein or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and all reservations of rights included in such objections or otherwise, are hereby denied and overruled on the merits with prejudice.  Those parties who did not object or withdrew their objections to the Sale Motion and had notice of the Sale Motion are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code.

## II.    **Approval of the Agreement**

4.    The Debtor is authorized to enter into and perform under the Agreement and all other ancillary documents, and all of the terms and conditions thereof, are hereby approved.

5.    Pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, the Debtor is authorized and empowered to take any and all actions they deem necessary or appropriate to (a) consummate the Sale pursuant to, and in accordance with, the terms and conditions of the Agreement, together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Agreement, (b) close the Sale as contemplated in the Agreement and this Sale Order, and (c) execute and deliver, perform under, consummate, implement, and fully close the Agreement and the transactions contemplated thereunder, including the assumption and assignment to the Purchaser of the Assigned Contracts, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Agreement and the Sale.

6.    This Sale Order shall be binding in all respects upon the Debtor, its estate, all creditors of, and holders of equity interests in the Debtor, any holders of Liens, Claims, any governmental unit (as defined in section 101(27) of the Bankruptcy Code) or other interests (whether known or unknown) in, against, or on all or any portion of the Acquired Assets, all counterparties to any contract or lease of the Debtor, the Purchaser and all successors and assigns of the Purchaser, the Acquired Assets, and any trustee, if any, subsequently appointed in the Chapter 11 Case or upon a conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code.  This Sale Order and the Agreement shall inure to the benefit of the Debtor, its estate and creditors, the Purchaser, and the respective successors and assigns of each of the foregoing.

13

65731/0001-45341383v3

### III.    <u>Transfer of the Acquired Assets</u>

7.      Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, the Debtor is authorized to transfer the Acquired Assets to the Purchaser in accordance with the terms of the Agreement and such transfer shall constitute a legal, valid, binding, and effective transfer of such Acquired Assets and shall vest the Purchaser with title to the Acquired Assets and, other than Assumed Liabilities, shall be free and clear of all Liens, Claims, and other interests of any kind or nature whatsoever, with all such Liens, Claims, or other interests, other than the Assumed Liabilities, to attach to the net cash proceeds ultimately attributable to the property against or in which such Liens, Claims, or other interests are asserted, subject to the terms thereof, with the same validity, force, and effect, and in the same order of priority, which such Liens, Claims, or other interests had prior to the Sale, subject to any rights, claims, and defenses the Debtor or its estate, as applicable, may possess with respect thereto.

8.      The Debtor is hereby authorized to take any and all actions it deems necessary to consummate the Agreement, the transactions contemplated thereunder and this Sale Order, including any act or omission that otherwise would require further approval by shareholders, or its board, as the case may be, without the need to obtain such approvals.

9.      Any of Debtor's rights, claims or causes of action under Chapter 5 of the Bankruptcy Code constitute "Excluded Assets" under the Agreement.  Notwithstanding anything to the contrary in the Agreement (if any), the following constitute "Excluded Assets" under the Agreement: (i) any and all claims and causes of action of the Debtor and the estate against current and former directors and officers, (ii) any and all claims and causes of action of the Debtor and the estate against AmeriDrive and Cogent Bank and (iii) any and all other claims and causes of action

14

of the Debtor and its estate which are not expressly included in the definition of "Acquired Assets" under the Agreement.

10.     The transfer of the Acquired Assets to the Purchaser pursuant to the Agreement does not require any consents other than as specifically provided for in the Agreement.  Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary or appropriate to consummate the transactions contemplated by the Agreement (including all ancillary documents executed in connection therewith).  A certified copy of this Sale Order may be filed with the appropriate clerk or recorded with the recorder of any state, county, or local authority to act to cancel any of the Liens, Claims, and other encumbrances of record except those assumed as Assumed Liabilities.  Nothing in this Sale Order or the Agreement releases, nullifies, precludes, or enjoins the enforcement of any valid police or regulatory liability to a governmental unit, to which the Purchaser may be subject to as the owner or operator of any property that is a Acquired Asset after the date of entry of this Sale Order; provided, however, that all rights and defenses of the Purchaser under non-bankruptcy law are preserved.  Nothing in this Sale Order or the Agreement authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law. Nothing in this Sale Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Sale Order or to adjudicate any defense asserted under this Sale Order.

11.     If any person or entity that has filed statements or other documents or agreements evidencing Claims or Liens on, or interests in, all or any portion of the Acquired Assets (other than statements or documents with respect to Assumed Liabilities) shall not have delivered to the

Debtor, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Claims, Liens, or interests which the person or entity has or may assert with respect to all or any portion of the Acquired Assets, the Debtor is hereby authorized, and the Purchaser is hereby authorized, on behalf of the Debtor and the Debtor's creditors, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Acquired Assets (other than statements or documents with respect to Assumed Liabilities).  The Debtor and the Purchaser are each authorized to file a copy of this Sale Order, which, upon filing, shall be conclusive evidence of the release and termination of such Claim, Lien or interest.

12.    This Sale Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental units (as defined in section 101(27) of the Bankruptcy Code), secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease, and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Sale.  All entities or persons described in this paragraph are authorized to strike all recorded liens and encumbrances against the Acquired Assets (aside from Assumed Liabilities) from their records, official and otherwise.

13.    All persons and entities that are presently, or on the Closing Date may be, in possession of some or all of the Acquired Assets to be sold, transferred or conveyed to the Purchaser pursuant to the Agreement are hereby directed to surrender possession of the Acquired Assets to the Purchaser on the Closing Date.  Subject to the terms, conditions, and provisions of this Sale Order, all persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtor to sell and transfer the Acquired Assets to the Purchaser in accordance with the terms of the Agreement and this Sale Order.

## IV.    Assumption and Assignment of the Assigned Contracts

14.    The Debtor is hereby authorized and directed in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code to (a) assume and assign to the Purchaser, in accordance with the terms of the Agreement, the Assigned Contracts, as identified on **Exhibit 2** attached hereto,[6] free and clear of all Liens, Claims, and other interests of any kind or nature whatsoever (other than the Assumed Liabilities), and (b) execute and deliver to the Purchaser such documents or other instruments as the Purchaser deems necessary to assign and transfer the Assigned Contracts to the Purchaser.

15.    With respect to the Assigned Contracts: (a) the Debtor may assume each of the Assigned Contracts in accordance with section 365 of the Bankruptcy Code; (b) the Debtor may transfer and assign each Assigned Contract in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Assigned Contract that prohibit or condition the

---

[6]    Exhibit 2 identifies the Designated Contracts which, to the extent they are executory contracts or unexpired leases, are to be Assigned Contracts (the "Assumption/Assignment List") as of May 9, 2023. Pursuant to Section 1.5 of the Agreement, until the Closing, the Purchaser has the right to update and otherwise amend the Assumption/Assignment List by designating and/or un-designating executory contracts and unexpired leases for assumption and assignment.

17

transfer or assignment of such Assigned Contract or allow the party to such Assigned Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Assigned Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect; (c) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtor and assignment to the Purchaser of each Assigned Contract have been satisfied; (d) the Assigned Contracts shall be transferred and assigned to, and following the Closing remain in full force and effect for the benefit of, the Purchaser, notwithstanding any provision in any such Assigned Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and; (e) pursuant to section 365(k) of the Bankruptcy Code, the Debtor shall be relieved from any further liability with respect to the Assigned Contracts after such assumption and assignment to the Purchaser.

16.    All defaults or other obligations of the Debtor under the Assigned Contracts arising or accruing prior to the Closing Date or required to be paid pursuant to section 365 of the Bankruptcy Code in connection with the assumption and assignment of the Assigned Contracts, shall be cured by the Seller or the Purchaser pursuant to the terms of the Agreement, but solely to the extent that the amount of any Cure Cost has been adjudicated by this Court or consented to by the Debtor and Purchaser.

17.    Upon the Closing, or the payment of the Cure Costs, whichever is later, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested in all right, title and interest of each Assigned Contract.  Each of the Assigned Contracts shall be assumed and assigned to the Purchaser free and clear of all Liens, Claims or

18

other encumbrances (other than the Assumed Liabilities). The Debtor shall cooperate with, and take all actions reasonably requested by, the Purchaser to effectuate the foregoing.

18.    Each Assigned Contract counterparty is deemed to have consented to assumption and assignment, and the Purchaser shall be deemed to have demonstrated adequate assurance of future performance with respect to such Assigned Contract pursuant to sections 365(b)(l)(C) and 365(f)(2)(B) of the Bankruptcy Code.

19.    Upon the Debtor's assignment of the Assigned Contracts to the Purchaser under the provisions of this Sale Order, any additional orders of this Court, and payment of all Cure Costs pursuant to the terms hereof or the Agreement, no default shall exist under any Assigned Contract, and no counterparty to any Assigned Contract shall be permitted (a) to declare a default by the Purchaser under such Assigned Contract or (b) to otherwise take action against the Purchaser as a result of any Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Assigned Contract.

20.    The Cure Costs are hereby fixed at the amounts set forth in: (i) *Notice of possible Assumption and assignment of Certain Executory Contracts and Unexpired Leases in Connection Sale* [Docket No. 156]; (ii) *Amendment To Notice Of Possible Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases In Connection With Sale* [Docket No. 174] (iii) *Supplemental Notice Of Possible Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases In Connection With Sale* [Docket No. 175]; and (iv) *Second Supplemental Notice of Possible Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with Sale* [Docket No. 246] and except as set forth in this Sale Order, on the record of the Sale Hearing, as otherwise agreed in writing between the non-Debtor party to the Assigned Contract and the Debtor and Purchaser, or as determined by Court order, as the case may

19

be, each non-Debtor party to an Assigned Contract hereby is forever barred, estopped, and permanently enjoined from (*x*) asserting against the Debtor or the Purchaser, or the property of any of them, any default or Claim arising out of any indemnity obligation or warranties for acts or occurrences arising prior to or existing as of the Closing Date, or, against the Purchaser, any counterclaim, defense, setoff, or any other Claim asserted or assertable against the Debtor and (*y*) imposing or charging against the Purchaser or its affiliates any rent accelerations, assignment fees, increases, or any other fees as a result of the Debtor's assumption and assignments to the Purchaser of the Assigned Contracts; provided, however, that a counterparty to an Assigned Contract shall not be barred from seeking additional amounts on account of any defaults occurring between the deadline to object to Cure Costs set forth in the Assumption and Assignment Notice and the assumption of the Assigned Contract (with the liability for any such additional amounts, as between the Purchaser and Debtor, subject to the terms of the Agreement).

21.     The Purchaser shall be deemed to be substituted for the Debtor as a party to the applicable Assigned Contracts and the Debtor shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assigned Contracts which accrues after the Closing Date.  To the extent a cure objection remains unresolved with respect to an Assigned Contract as of the Closing Date, such Assigned Contract may be conditionally assumed and assigned to the Purchaser at the Closing pending a resolution of such objection after notice and a hearing, and the Purchaser, with the prior written consent of the Debtor (which consent shall be deemed given so long as the Purchaser assumes any liabilities of the estate that arise as a result of such delay), shall have the right to designate such Assigned Contract as an Excluded Asset after Closing Date if such objection is not resolved on terms satisfactory to the Purchaser in its sole and absolute discretion.

22.    All counterparties to the Assigned Contracts shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Purchaser, and shall not charge the Debtor or the Purchaser for any instruments, applications, consents, or other documents that may be required or requested by any public authority or other party or entity to effectuate the applicable transfers in connection with the sale of the Acquired Assets.

23.    Notwithstanding anything to the contrary in this Sale Order, as a condition to assumption and assignment of insurance policies Nos. AZBA0C4973227792; TXBA0C4973227794; and TXES0C49732277 between Mobilitas Insurance Company and HyreCar, Inc., effective December 31, 2022 (as renewed, amended, modified, endorsed or supplemented from time to time, collectively, the "Insurance Policies") to the Purchaser, (a) in full and final satisfaction of any and all amounts owed by the Debtor to Mobilitas as of the Closing, the Debtor shall pay the premium installment payments due as of May 1, 2023 (not to exceed $600,000) which have not yet been received, provided that nothing in this subpart (a) shall be interpreted as a ruling or finding that all amounts arising or owing under the Insurance Policies have been satisfied, and all amounts not paid or payable by the Debtor shall be paid by Purchaser; (b) Purchaser shall pay the entirety of all premium installment payments due on or after the Closing, by such due date; (c) Purchaser shall execute a master indemnification agreement as agreed between the Debtor and Mobilitas, to which the coverage evidenced by the Mobilitas Insurance Binder, issued and effective December 31, 2022, was subject; and (d) as required by the ongoing Premium Audit, the Debtor shall maintain all records for premium computation and provide exposure reports to Mobilitas as soon as is practicable for the first and second quarters of this year through Closing.  The net result of the ongoing Premium Audit (as defined in the Insurance Policies) shall be allocated to Purchaser.  $35,991.40 shall be withdrawn by Mobilitas

21

from the loss deposit fund for claim payments due as of May 4, 2023 from the Debtor under the self-insured retention program, and Purchaser shall bear the obligation – which is not a Seller-Responsible Vendor Liability – to replenish such fund as required by the Policies, including any amount attributable to SIR obligations incurred by HyreCar under the Policies prior to Closing.

24.    For the avoidance of doubt, the insurance policies issued by (i) National Union Fire Insurance Company of Pittsburgh, PA Primary D&O Policy, No. 01-416-05-92 (the "Primary D&O ABC Policy"); (ii) Westchester Fire Insurance Company, No. G71145839 004 (the "Excess D&O ABC Policy"); (iii) National Union Fire Insurance Company of Pittsburgh, PA Side A Excess DIC, No. 01-416-05-97 (the "Side A Only D&O Policy"); and (iv) Argonaut Insurance Company Side A Only Excess, No. MLX42091703 (the "Side A Only Excess D&O Policy," and collectively with the Side A Only D&O Policy, Excess D&O ABC Policy and Primary D&O ABC Policy, the "D&O Policies") are not being sold, assumed or assigned by the Debtor to the Purchaser pursuant to this Sale Order, and nothing herein is intended to modify or alter the terms of the D&O Policies. In addition, nothing herein is intended to alter or impair any Insured Persons' (as defined in the D&O Policies) rights, counterclaims or defenses.

## V.    Prohibition of Actions Against the Purchaser

25.    Except for Assumed Liabilities or as otherwise expressly provided for in this Sale Order, the Purchaser shall not have any liability or other obligation of the Debtor arising under or related to any of the Acquired Assets. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the Agreement, the Purchaser shall not be liable for any Claims or Liens against the Debtor or any of its predecessors or affiliates, and the Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, under any theory of antitrust, environmental, successor, or transferee liability, labor law, *de facto* merger, mere continuation, or substantial continuity, whether known or unknown, now

22

existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including, without limitation, liabilities on account of warranties and any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of any of the Acquired Assets prior to the closing of the Sale.

26.    Except with respect to the Assumed Liabilities or as expressly provided in this Sale Order, to the greatest extent allowed by applicable law, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental units (as defined in section 101(27) of the Bankruptcy Code), tax and regulatory authorities, lenders, trade creditors, litigation claimants, and other creditors, holding Liens, Claims, or other interests of any kind or nature whatsoever against, or in all or any portion of, the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to the Debtor, the Acquired Assets, the operation of the Debtor's business prior to the Closing, or the transfer of the Acquired Assets to the Purchaser, hereby are forever barred, estopped and permanently enjoined from asserting against the Purchaser, any of the Purchaser's affiliates, successors, or assigns, their property or the Acquired Assets, such persons' or entities' Liens, Claims, or interests in and to the Acquired Assets.

27.    All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtor to sell and transfer the Acquired Assets to the Purchaser, or the ability of Purchaser to utilize such Acquired Assets, in accordance with the terms of the Agreement and this Sale Order.

23

## VI.   **Other Provisions**

28.     The consideration provided by the Purchaser to the Debtor pursuant to the Agreement for the Acquired Assets was negotiated in good faith and at arm's-length and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Voidable Transactions Act, Uniform Fraudulent Conveyance Act, and under the laws of the United States, any state, territory, possession, or the District of Columbia.  The terms and conditions set forth in the Agreement and all ancillary documents filed therewith or described therein are fair and reasonable under these circumstances and were not entered into with the intent to, nor for the purpose of, nor do they have the effect of, hindering, delaying, or defrauding the Debtor or its creditors under any applicable laws.  Neither the Debtor nor the Purchaser is entering into the Agreement and any ancillary documents filed therewith or described therein or proposing to consummate the Sale fraudulently, for the purpose of statutory or common law fraudulent conveyance or fraudulent transfer claims, whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia or any other applicable jurisdiction.

29.     The transactions contemplated by the Agreement (including all ancillary documents executed in connection therewith) were negotiated and entered into based upon arm's-length bargaining and are undertaken by the Purchaser without collusion or fraud, and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code.  The Purchaser is entering into the Agreement in good faith, as that term is defined in section 363(m) of the Bankruptcy Code and is a good faith purchaser for value within the meaning of section 363(m) of the Bankruptcy Code.  Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale or the assumption and assignment of

24

the Assigned Contracts, unless such authorization and such Sale are duly stayed pending such appeal prior to Closing.  Neither the Debtor nor the Purchaser have engaged in any conduct that would cause or permit the Sale, the Agreement, or any related action or the transactions contemplated thereby to be avoided or subject to monetary damages under section 363(n) of the Bankruptcy Code, or that would prevent the application of section 363(m) of the Bankruptcy Code. The Purchaser is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

30.     The automatic stay pursuant to section 362 of the Bankruptcy Code is lifted to the extent necessary, without further order of the Court, to allow the Purchaser and the Debtor to (a) deliver any notice provided in the Agreement and any ancillary documents, and (b) take any and all actions permitted under this Sale Order, the Agreement, and any ancillary documents in accordance with the terms and conditions thereof.

31.     For cause shown, pursuant to Bankruptcy Rules 6004(h) and 7062(g), this Sale Order shall not be stayed, shall be effective immediately upon entry, and the Debtor and the Purchaser are authorized to close the Sale immediately upon entry of this Sale Order.

32.     The failure to specifically include any particular provision of the Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be authorized and approved in its entirety; provided that this Sale Order shall govern if there is any inconsistency between the Agreement (including all ancillary documents executed in connection therewith) and this Sale Order.

33.     The Agreement and any related agreements, documents, or other instruments may be waived, modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court; provided, however, that any such written waiver,

25

modification, amendment, or supplement is not material and substantially conforms to, and effectuates, the Agreement and any related agreements.

34.     From time to time, as and when requested, all parties to the Sale shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as the requesting party may reasonably deem necessary or desirable to consummate the Sale, including such actions as may be necessary to vest, perfect or confirm or record or otherwise in the Purchaser, its right, title and interest in and to the Acquired Assets.

35.     To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Sale Motion in this Chapter 11 Case, the terms of this Sale Order shall govern.

36.     The Court shall retain jurisdiction to the maximum extent provided by law to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtor is a party or which have been assigned by the Debtor to the Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, including, but not limited to, retaining jurisdiction to: (a) compel delivery of the Acquired Assets to the Purchaser; (b) interpret, implement, and enforce the provisions of this Sale Order; (c) protect the Purchaser against any Liens, Claims, or other interest in or against the Debtor or the Acquired Assets of any kind or nature whatsoever, attaching to the proceeds of the Sale; and (d) enter any orders under the Bankruptcy Code with respect to the Assigned Contracts.

*Thomas M. Horan*

**Dated: May 15th, 2023**          **THOMAS M. HORAN**
**Wilmington, Delaware**          **UNITED STATES BANKRUPTCY JUDGE**

65731/0001-45341383v3